UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JAMES R. GIBSON,

                            Plaintiff,

       -against-

WESTCHESTER MEDICAL CENTER
HEALTH CARE CORPORATION,
JANE DOE 1, JANE DOE 2, and DOES 3-10,

                          Defendants.
----------------------------------------------------------x

Case No.: 20 Civ. 4263

**JURY TRIAL DEMANDED**

Plaintiff, JAMES R. GIBSON, through his attorneys, The Bellantoni Law Firm, PLLC, for his complaint states as follows:

## NATURE OF THE ACTION

1. This is an action for, *inter alia*, compensatory, and punitive damages proximately resulting from defendant's unlawful discrimination against the plaintiff based on his disability as protected by the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*, New York State Executive Law § 296, *et seq.,* and related federal and state statutes and regulations.

## JURISDICTION

2. The Court's jurisdiction over the plaintiff's federal claims is invoked pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.  Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") premised on disability discrimination and retaliation in violation of the American With Disabilities Act on May 14, 2019.  The plaintiff was issued a Notice of Right to Sue by the EEOC dated March 6, 2020, which was received within days thereafter.

## THE PARTIES

3. Plaintiff JAMES R. GIBSON (hereinafter "Plaintiff") is a domiciliary of the State of New York and a resident of the northern counties. At all times relevant to this complaint, he was, and continues to be, deaf and mute and requires an American Sign Language sign language interpreter to effectively communicate with auditory-capable individuals.

4. Defendant WESTCHESTER MEDICAL CENTER HEALTH CARE CORPORATION (hereinafter "WMC") is located in Valhalla, New York, receives both federal and state funding and employs more than 15 individuals. By reason of that funding, WMC is required to, *inter alia*, comply with state and federal laws relating to the protection of the civil rights of disabled individuals, including providing sign language interpreters for the deaf.

5. Defendants "JANE DOE 1" and "JANE DOE 2" are staff of WMC working at and for WMC during Plaintiff's hospital stay, as detailed below.

6. Defendants "DOES 3-10" are staff of WMC working at and for WMC during Plaintiff's hospital stay, yet unidentified.

7. WMC is liable for the actions and omissions of JANE DOE 1, JANE DOE 2, and "DOES 3-10" under the theory of *respondeat superior* liability for their violations of New York State common laws and regulations.

## THE MATERIAL FACTS

8. Plaintiff has been deaf since birth.

9. Plaintiff's language/manner of communication is American Sign Language ("ASL").

10. Plaintiff was a patient at WMC from November 6, 2018 until his discharge on November 16, 2018, for care and treatment related to acute decompensated congestive systolic heart failure.

11. WMC failed to provide effective means of communicating with Plaintiff, including failing to provide appropriate auxiliary aids and services, which deprived Plaintiff of effective communication for purposes of medical treatment and care.

12. Prior to Plaintiff's hospital visit, WMC was informed of Plaintiff's disability, needs for effective communication for medical purposes, to wit, the need for an ASL interpreter.

13. Plaintiff made WMC aware of his request in advance of his stay because Plaintiff had previously been a patient at WMC. During at least one Plaintiff's previous stays at WMC, WMC staff attempted to use alternative auxiliary aids, which proved ineffective, unreliable, and which WMC staff was not properly trained to use.

14. WMC was on notice of the ineffectiveness of its remote video services, having been so advised by Plaintiff based on his past experiences and visits at WMC.

15. During Plaintiff's November 6, 2018 – November 16, 2018 hospital admission, WMC did provide an interpreter during certain hours of the day.

16. However, WMC filed and refused to provide an interpreter, ASL or otherwise, during the remaining hours of Plaintiff's admission. As a result, during those hours, Plaintiff had no effective means of communicating with his medical treaters and WMC staff.

17. For instance, Plaintiff was without an interpreter during, *inter alia,* his doctors' rounds, during medical emergencies during overnight hours, when medicine was being administered to Plaintiff, and when medical testing was being performed – times where

3

Plaintiff needed to communicate about his medical condition, care, and treatment.

18. The time of day in which Plaintiff required the use of an interpreter was unpredictable and varied. Where no interpreter was provided, Plaintiff was left unable to communicate with or understand what WMC staff and/or his treaters were trying to communicate to him. Likewise, Plaintiff's treaters and WMC staff were unable to understand what Plaintiff was attempting to communicate to them.

19. The auxiliary aids provided by WMC and its agents when an interpreter was not provided were an ineffective means of communication between Plaintiff, his treaters, and WMC staff.

20. As noted above, Plaintiff's method of communication is American Sign Language.

21. Plaintiff has ineffective speech capabilities.

22. Plaintiff cannot effectively communicate or understand communications through lip-reading methods.

23. When communicating with hearing individuals who cannot communicate with Plaintiff through the use of American Sign Language, Plaintiff's method of communicating is the use of an ASL interpreter.

24. The nature, length, and complexity of the communication involved in Plaintiff's stay at WMC was complex, involving, *inter alia*, medical terminology, discussions concerning cardiac surgery, prescribed medications, post-surgical feedback, discharge plan, diagnoses, procedures, tests, treatment options, (e.g., dosage, side effects, drug interactions, etc.), to explain follow-up treatments, therapies, test results, and/or recovery, which required an ASL interpreter.

25. WMC provided Plaintiff with no means of effective communication at time where such communications needed to take place and/or took place in the absence of an interpreter, leaving Plaintiff without an understanding of what his treaters and/or WMC staff attempted to communicate.

26. In determining what types of auxiliary aids and services are "necessary" under the circumstances, WMC was required by the ADA to "give primary consideration to [Plaintiff's] requests, which they did not. See, 28 C.F.R. § 35.160(b)(2).

27. WMC failed on numerous occasions during Plaintiff's hospital stay to provide an effective means of communication between Plaintiff and his physicians, treaters and WMC staff, failed to secure informed consent from Plaintiff during his care and treatment and/or the administration of medicine, failed to properly inform Plaintiff prior to administering care and treatment because of the lack of proper communication, administered medicine, procedures, and/or treatment despite lacking Plaintiff's informed consent, failed to provide Plaintiff with information concerning his rights under the New York State Patient's Bill of Rights, unlawfully used and attempted to use Plaintiff's family members as sign language interpreters, failed to provide a sign language interpreter during the evening hours until the next morning, despite repeated requests by Plaintiff and his family members.

28. WMC's acts and omissions deprived Plaintiff of an effective means of communication for purposes of medical treatment.

29. For instance, WMC staff utilized handwritten notes and faulty, non-working and unreliable video remote interpreting ("VRI") machines, failed to have a dedicated high-speed wide bandwidth video connection and/or wireless connection for such VRI service impeding the ability to effectively communicate with medical providers.

30. Specific examples of the above violations include the following:

31. On November 6, 2018, staff member believed to be Lauren Bernarck, LPN (aka "Jane Doe 1" attempted to communicate with Claimant by requiring him to read her lips as she was preparing to insert, and while she was inserting, Claimant's IV line. The woman was Caucasian, stocky, about 5'7", with white/gray hair appearing to be in her 60's. Claimant is not proficient in lip reading beyond extremely basic words, but in any event, not proficient in regard to understanding medical-related communications.

32. Plaintiff physically gestured to Jane Doe 1 that he could not communicate with her in that manner.

33. Plaintiff's family members, who were present, also informed Jane Doe 1 that Plaintiff was not proficient in reading lips.

34. Jane Doe 1 verbally compared Plaintiff to her deaf nephew, boasting, "I know how to handle deaf people."

35. As Jane Doe 1 exited Plaintiff's room, she turned to face Plaintiff and his family members and mouthed the words, "Fuck you", prompting a reaction from Plaintiff, to which she responded in substance, "See, I knew you could read lips."

36. While Plaintiff was in the Cardiac Cath Lab, he was subjected to unwanted touching and placed in reasonable fear of unwanted touching, unrelated to his separate claims above of lack of informed consent when an unidentified female non-physician staff member aka "Jane Doe 2" forcefully grabbed and pulled his face to turn it toward her at least (3) separate times, in an attempt to force Plaintiff to read her lips. Jane Doe 2 persisted in such conduct in spite of Plaintiff's clear physical reactions communicating his objections to her touching him and attempting to communicate by lip-reading methods.

37. Jane Doe 2, and other WMC staff, interfered with Plaintiff's access to a sign language interpreter by refusing Plaintiff's requests to have the sign language interpreter present during medical procedures. The actions of Jane Doe 2 and WMC staff deprived Plaintiff of effective means of communication.

38. During his hospital stay, Plaintiff and his family members repeatedly requested a live sign language interpreter as an effective means of communicating with WMC staff and medical treaters overnight, however, WMC staff forced the use of note writing, which was not an effective means of communication with Plaintiff.

39. WMC staff refused to give the notes, or copies of the notes, to Plaintiff as he requested, and instead destroyed and/or threw the notes away.

40. After refusing Plaintiff's repeated requests for the handwritten notes, WMC staff thereafter utilized a whiteboard to attempt to communicate with Plaintiff.

41. Use of a whiteboard, likewise, was an ineffective means of communication. Moreover, it ensured the destruction of WMC staff communications, as WMC staff erased the board after they were finished with each particular announcement.

42. WMC staff repeatedly attempted to force Plaintiff to use a VRI machine, which was an ineffective means of communicating with Plaintiff, the service did not work properly, was unreliable, and WMC staff was not properly trained to use the service.

43. On one occasion, Plaintiff's physician entered his room to communicate with Plaintiff, and attempted to use the VRI for such communication. The VRI did not work at all and there was no live sign language interpreter provided by WMC for Plaintiff to communicate with his physician.

44. WMC failed to properly train its staff to comply with federal and state statutes, regulations, and state common law.

45. Despite numerous requests by Plaintiff and his family members, to WMC staff and its administration, to provide an ASL interpreter during the hours where no interpreter was provided, WMC refused to provide an interpreter.

46. WMC exhibited deliberate indifference to Plaintiff's rights by failing to provide an ASL interpreter for Plaintiff during his entire stay at WMC, failing to provide adequate means of communication that would allow for meaningful interaction and understanding between Plaintiff and his treaters, WMC staff, and medical personnel.

47. WMC exhibited deliberate indifference to Plaintiff's rights by failing to properly train its staff and treaters on the civil rights of disabled persons as codified under federal and state laws.

48. After Plaintiff and his family members made requests for an ASL interpreter, WMC staff and administration retaliated against Plaintiff by, *inter alia*, refusing to respond to requests for assistance from Plaintiff and/or his family members on his behalf, negative, discriminatory comments, refusing to provide Plaintiff with the handwritten notes or copies of such notes by taking the papers from Plaintiff, and transitioning to an erasable board and erasing the words to destroy evidence of the communications.

49. WMC exhibited deliberate indifference to Plaintiff's rights by failing to properly train its staff on the prohibition of retaliating against disabled persons who assert their rights under the relevant federal and state statutes.

50. WMC is liable for the conduct of its staff for discriminating and retaliating against Plaintiff, as detailed herein.

51. Because Plaintiff's treating physician performs his surgeries and procedures at WMC, Plaintiff anticipates that he will be, and intends to be, a patient at WMC in the future.

52. Plaintiff suffered, *inter alia*, unwanted touching, fear of unwanted touching, emotional stress, anxiety, pain and suffering, embarrassment, humiliation, fear, and sadness.

## AS AND FOR A FIRST CAUSE OF ACTION

53. Repeats and realleges each and every allegation of fact contained in paragraphs 1 -52, inclusive.

54. Under the theory Westchester Medical Center Health Care Corporation is liable to Plaintiff for violating the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

55. Repeats and realleges each and every allegation of fact contained in paragraphs 1 – 54, inclusive.

56. Under the theory Westchester Medical Center Health Care Corporation is liable to Plaintiff for violating the Rehabilitation Act of 1973 § 504 *et seq.*; 29 U.S.C. § 701 *et seq.*

## AS AND FOR A THIRD CAUSE OF ACTION

57. Repeats and realleges each and every allegation of fact contained in paragraphs 1 - 56, inclusive.

58. Under the theory Westchester Medical Center Health Care Corporation is liable to Plaintiff for violating New York State Executive Law § 296 *et seq.*

## AS AND FOR A FOURTH CAUSE OF ACTION

59. Repeats and realleges each and every allegation of fact contained in paragraphs 1 - 58, inclusive.

60. Under the theory Westchester Medical Center Health Care Corporation and Jane Doe 2 are liable to Plaintiff for common law battery and common law assault.

## AS AND FOR A FIFTH CAUSE OF ACTION

61. Repeats and realleges each and every allegation of fact contained in paragraphs 1 - 60, inclusive.

62. Under the theory Westchester Medical Center Health Care Corporation is liable to Plaintiff for violating New York State Executive Law § 296 *et seq.*

## AS AND FOR A SIXTH CAUSE OF ACTION

63. Repeats and realleges each and every allegation of fact contained in paragraphs 1 - 62, inclusive.

64. Under the theory Westchester Medical Center Health Care Corporation, JANE DOE 1, JANE DOE 2, AND DOES 2-10 are liable to Plaintiff for violating violations of 10 NYCRR § 405.7.

## AS AND FOR A SEVENTH CAUSE OF ACTION

65. Repeats and realleges each and every allegation of fact contained in paragraphs 1 - 64, inclusive.

66. Under the theory Westchester Medical Center Health Care Corporation, JANE DOE 1, JANE DOE 2, AND DOES 2-10 are liable to Plaintiff for violating 14 NYCRR § 527.4.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

67.     Repeats and realleges each and every allegation of fact contained in paragraphs 1 - 66, inclusive.

68.     Under the theory Westchester Medical Center Health Care Corporation, JANE DOE 1, JANE DOE 2, AND DOES 2-10 are liable to Plaintiff for lack of informed consent.

## AS AND FOR A NINTH CAUSE OF ACTION

69.     Repeats and realleges each and every allegation of fact contained in paragraphs 1 - 68, inclusive.

70.     Under the theory Westchester Medical Center Health Care Corporation, JANE DOE 1, JANE DOE 2, AND DOES 2-10 are liable to Plaintiff for negligence *per se*.

WHEREFORE, Plaintiff respectfully demands judgment for:

- compensatory damages to Plaintiff;
- punitive damages for the intentional, deliberately indifferent and malicious conduct engaged in by the defendants, the amount of which is to be determined by a jury;
- non-economic and intangible damages;
- reasonable attorney's fees and costs; and
- any such other relief as may be deemed just and proper.

Dated: June 4, 2020
    Scarsdale, New York

        THE BELLANTONI LAW FIRM, PLLC
        *Attorneys for Plaintiff*

By:     /s/ Amy L. Bellantoni
        Amy L. Bellantoni (AB3061)
        2 Overhill Road, Suite 400
        Scarsdale, New York 10583
        (914) 367-0090 (t)
        (888) 763-9761 (f)
        abell@bellantoni-law.com